# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

November 16, 2016

**By ECF and E-Mail**

The Honorable Paul A. Crotty
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

>    Re:   *United States v. Campo Flores & Flores de Freitas*, 15 Cr. 765 (PAC)

Dear Judge Crotty:

Defendants Efrain Campo Flores and Franqui Francisco Flores de Freitas respectfully submit this letter in support of the Defendants' joint request to preclude the Government from introducing or making any argument related to GX 607–610. Based on the testimony of CS-1 on direct examination, Defendants believe that the Government admitted these exhibits for the sole purpose of arguing that Defendants have a connection to Honduran drug traffickers in the Honduran government.

CS-1 testified as follows on direct examination:

```
3     Q.  In your work as a DEA informant did you ever meet with
4     someone named Julian Pacheco Tinoco?
5     A.  Yes, sir.
6     Q.  What country did you meet Mr. Pacheco Tinoco in?
7     A.  In Honduras.
8     Q.  And were you aware whether -- of whether he had a position
9     in the Honduran government?
10    A.  Yes, sir.
11    Q.  What was that position?
12    A.  Minister of Defense of Honduras.
13    Q.  And how did you meet him?
14          MR. JACKSON:  Your Honor, I would just object on the
15    relevance ground.
16          THE COURT:  Overruled.
17    Q.  How did you meet him?
18    A.  I met him through the son of the ex president of Honduras
19    Fabio Lobo.
20    Q.  Were you meeting with Mr. Lobo as part of your work as a
21    DEA informant?
22    A.  Yes, sir.
23          MR. QUIGLEY:  One moment, your Honor.
24    Q.  What did the meeting with Mr. Pacheco relate to?
25    A.  It was for him to give me support to receive shipments from
```

```
1    Colombia to Honduras.  He was in charge of the security part in
2    Honduras.
3    Q.  And what kind of shipments?
4    A.  Cocaine.
```

Tr. at 722-23.  GX 610 appears to be a note or draft email extracted from Mr. Campo Flores' phone which includes the names "Julian Pacheco Tinoco" and "Orlando Daza alias el flaco." GX 607–609 relate to GX 610 and reflect different drafts of this note or draft email and the user information that purport to show that this note was extracted from Mr. Campo Flores' phone. Defendants believe that the Government intends to invoke these exhibits to argue that the Defendants were associated with Honduran drug traffickers.  Because GX 607–GX 610 are unduly prejudicial and are not probative of the existence or nonexistence of the charged conspiracy, the Court should exclude any argument related to these exhibits from trial.

It is a separate but related matter whether, after CS-1 perjured himself on the stand in this trial, this testimony can even be credited in the first instance as laying any foundation for the relevance of these exhibits.  Defendants submit that the above testimony should not be credited and, without it, GX 607-610 have no relevance whatsoever and should be excluded for the reasons set forth below.  Assuming, however, that the Court credits CS-1's testimony in this respect only, the Government should still be precluded from making any argument about GX 607-610.

Relevant evidence is that which has "(a) any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion."  *United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976).

The testimony of CS-1 is the *only* evidence presented in this case that could relate to GX 607-610.  This testimony, however, has failed to demonstrate that GX 607–610 have any relevance whatsoever to the conspiracy charged in this case.  GX 607–610 are also unduly prejudicial as their admission would confuse and mislead the jury by unfairly associating the Defendants with a Honduran official who may or may not have been involved in drug trafficking.  The Court should preclude argument with respect to these exhibits because it is entirely irrelevant, not being offered for any proper purpose, and its probative value is far outweighed by its prejudicial effect.  Indeed, any argument with respect to GX 607-610 has almost no probative value.[1]  *See, e.g., United States v. Lamarr*, 75 F.3d 964, 968-70 (4th Cir.

---

[1] As a matter of law, this evidence is not even probative of aiding and abetting criminal conduct, let alone committing criminal conduct.  *United States v. Heath*, 188 F.3d 916, 921 (7th Cir. 1999) ("The government must demonstrate aiding and abetting by showing that the defendant associated himself with the activity at issue and participated voluntarily in it; moreover, the government must show that his conduct demonstrated that he tried to make the activity succeed.  In order to show that the defendant associated himself with the act, the prosecutor must show that the defendant shared the principal's criminal intent.  To show the defendant's participation in the activity, it must present evidence that the defendant affirmatively acted to make the venture succeed.  **Two types of conduct that fail to prove aiding and abetting are mere presence and guilt by association.**") (internal citations and

2

1996) (expressing strong disapproval of questioning relating to general involvement in drug trafficking in conspiracy to distribute narcotics prosecution because "the question's relationship to the charged conspiracy was tenuous. Had Greaves answered in the affirmative, the question's primary effect would have been to impermissibly paint Mallory, and Lamarr by association, as drug traffickers. Thus it was unnecessary under Rule 404(b) and unfairly prejudicial under Rule 403.").

The Government has failed to establish that Mr. Pacheco Tinoco is, in fact, involved in illegal drug trafficking. CS-1 testified that he worked with Mr. Pacheco Tinoco as part of his duties as a DEA informant. He never testified that Mr. Pacheco Tinoco was involved in illegal drug trafficking nor did the Government offer any evidence that Mr. Pacheco Tinoco and CS-1 were involved in unauthorized drug trafficking operations. The testimony, if accepted as true, established only that Mr. Pacheco Tinoco and CS-1 were involved in *separate and unrelated* drug sting operations. The testimony elicited from CS-1 failed to establish a time period in which CS-1 and Mr. Pacheco Tinoco were associating and, importantly, failed to link this association to the sting operation which embroiled the Defendants in this case. Moreover, the testimony failed to establish that Defendants had *any knowledge whatsoever* of Mr. Pacheco Tinoco's alleged involvement in unauthorized drug trafficking.

As such, the Government has failed to lay a proper foundation making any potential knowledge or association between the Defendants and Mr. Pacheco Tinoco relevant. Importantly, the Government has failed to establish that Mr. Pacheco Tinoco is a drug trafficker. Even if CS-1's testimony could provide that foundation, which it cannot, the fact that the Defendants have a note on their phones which includes the name of Mr. Pacheco Tinoco and other very common aliases[2] does not make this note or draft email relevant and, given the testimony elicited from CS-1, any argument to this effect is not only irrelevant but highly and unduly prejudicial.

Indeed the testimony elicited from CS-1 in concert with the admission of GX 607-610 and argument about GX 607-610 is nothing more than a veiled attempt to introduce impermissible evidence of prior bad acts without laying *any* foundation for these bad acts or their relevance.[3] "The Government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002). It is difficult to and, in fact, improper to characterize this as "other bad act" evidence, however, as there is no evidence of any *act* whatsoever.

---

quotations omitted) (emphasis added). "**Without evidence of Mr. Heath's knowledge of Cannon's possession, their prior association, or his intent to join Cannon's drug dealing—indeed, without evidence of something other than Mr. Heath's being present with Cannon—we believe that this evidence, placed before a jury, would be insufficient as a matter of law**." *Id.* at 922 (emphasis added).

[2] The fact that the alias "El Flaco," which means nothing more than the "skinny" guy, is commonly used in Spanish language is clear from the fact that Agent Gonalez used the alias "Flaco" in his Blackberry Messenger communications in this case. Without more, the Government is unable to link the alias "El Flaco" in the note or draft email with any relevant character or alleged participant in this sting operation.

[3] It is important to note that the Government failed to provide notice of its intent to introduce this evidence under Rule 404(b), as this association or connection is not listed as part of its prior bad act evidence in its October 12, 2016 Letter providing notice of its Rule 404(b) evidence.

3

Any link between a note documenting contact information of certain individuals and aliases and a prior drug trafficking operation would be based solely on argument. Evidence of prior similar or bad acts is only admissible under Rule 404(b) if the Government can satisfy two requirements. *First*, the prior bad act must be offered for a proper purpose. Fed. R. Evid. 404(b). *Second*, the Government must present enough evidence of this prior bad act that a jury "could reasonably find by a preponderance of the evidence that the act occurred and that the defendant committed the act." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Here the Government cannot satisfy either requirement for admissibility of other prior bad acts because it cannot establish in any way that the stray notes extracted from the Defendants' phones are linked to a drug deal. For these same reasons, the Government cannot characterize these exhibits as evidence of predisposition and admit them based on the Defendants' possible entrapment defense.

Put simply, there is no evidence here of a prior act whatsoever.[4] "If the government cannot identify a similarity or some connection between **the prior and current acts**, then evidence of **the prior act** is not relevant to show knowledge and intent." *Garcia*, 291 F.3d at 137 (emphasis added); *see also United States v. McCallum,* 584 F.3d 471, 475 (2d Cir. 2009) ("Where such evidence is offered for the purpose of establishing the defendant's knowledge or intent, we require that the government 'identify a similarity or connection between **the two acts** that makes the prior act relevant to establishing knowledge of the current act.'"). GX 607-610 demonstrate nothing more than that Defendants were aware of the existence of individuals with the names of Mr. Pacheco Tinoco and El Flaco. That fact, if accepted as true, is not relevant and has the potential to confuse and mislead the jury and waste the jury's and court's time. For those reasons, GX 607-610 should be excluded and any argument related to GX 607-610 should be precluded. The Defendants appreciate the Court's consideration.

Respectfully submitted,

\_\_\_\_\_/s/ Randall W. Jackson_____     \_\_\_\_/s/ David M. Rody_____
Randall W. Jackson                          David M. Rody
John T. Zach                                Michael D. Mann
Joanna Wright                               Elizabeth Espinosa
Boies, Schiller & Flexner LLP               Sidley Austin LLP

---

[4] Even if the Government could establish that the notes or draft email indicate a prior drug deal, which they cannot, this evidence would still be inadmissible. *Garcia*, 291 F.3d at 138 (2d Cir. 2002) ("The only similarity between the two drug transactions, which twelve years separated, is that both involved cocaine. However, the 1988 conviction involved two grams of cocaine, while the 2000 offense involved between three and eleven kilograms of cocaine. The government did not offer evidence of any other similarity or connection between the two transactions. There was no proffer that the earlier transaction used a code or involved the same people. Nothing in the certificate of disposition or the plea allocution suggest any similarity between the events beyond the word "cocaine." Nothing in the record explains how Garcia's participation in a minor drug sale twelve years earlier is any more than marginally probative of the fact that Garcia must have known that drug dealers speak in code and must have known that the July 10, 2000, conversation was a coded conversation about a drug deal.")

cc:     AUSA Emil Bove
        AUSA Brendan Quigley