```
GB29FLO1                         Trial
```

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     UNITED STATES OF AMERICA,
3
                v.                            15 Cr. 765 (PAC)
4
     EFRAIN ANTONIO CAMPO FLORES and
5    FRANQUI FRANCISCO FLORES DE FREITAS,

6                   Defendants.
     ------------------------------x
7
                                              New York, N.Y.
8                                             November 2, 2016
                                              10:10 a.m.
9    Before:

10                       HON. PAUL A. CROTTY,

11                                            District Judge

12                            APPEARANCES

13   PREET BHARARA
          United States Attorney for the
14        Southern District of New York
     EMIL J. BOVE III
15   BRENDAN F. QUIGLEY
          Assistant United States Attorneys
16
     BOIES, SCHILLER & FLEXNER LLP
17        Attorneys for Defendant Campo Flores
     RANDALL W. JACKSON
18   JOHN T. ZACH
     JOANNA CHRISTINE WRIGHT
19
     SIDLEY AUSTIN LLP
20        Attorneys for Defendant Floresde Freitas
     DAVID M. RODY
21   ELIZABETH A. ESPINOSA
     MICHAEL D. MANN
22
     ALSO PRESENT:
23
     HUMBERTO GARCIA
24   MERCEDES AVALOS
     Spanish Interpreters
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1              (In open court )
2              THE COURT:  Good morning.  I'm glad we're all
3     together.  It took a little bit of extra doing.
4              (Case called)
5              MR. BOVE:  Good morning, your Honor.  Emil Bove and
6     Brendan Quigley for the government.  We have here with us
7     Special Agent Sandalio Gonzalez and Peter Calabrese from my
8     office.
9              MR. JACKSON:  Good morning, your Honor.  Randall
10    Jackson, John Zach and Joanna Wright for defendant Efrain Campo
11    Flores.
12             MR. RODY:  Good morning, your Honor.
13             Dave Rody, Mike Mann, and Elizabeth Espinosa for
14    Mr. Franqui Flores.
15             THE COURT:  Has everybody been briefed now on the
16    timing of the jury selection?
17             MR. JACKSON:  Yes, your Honor.
18             MR. BOVE:  Yes, Judge.
19             THE COURT:  Now there's a problem.  We have a lot --
20    we're going to have over a hundred potential jurors.
21             THE DEPUTY CLERK:  94 is the number.
22             THE COURT:  Approximately a hundred.  Which we want to
23    have in the courtroom.  So this is a public proceeding.  The
24    public has a right to attend.  I don't want to have the public
25    mixed with the jury pool.  Anybody have any suggestions?

1            MR. JACKSON:  Your Honor, it might make sense to ask
2   the press to adopt the last row of the courtroom and any
3   standing room that is after that and then allow the jurors to
4   fill in to the seats that are in front of that.
5            THE COURT:  I'm just looking at the audience,
6   Mr. Jackson.  It's bigger than one row.  How about an overflow
7   room?
8            MR. JACKSON:  An overflow room makes a lot of sense to
9   us, your Honor, if it's available to the Court.
10           THE COURT:  Mr. Rody.
11           MR. RODY:  Fine with us, your Honor.
12           THE COURT:  Mr. Bove?
13           MR. BOVE:  Sounds good, Judge.
14           THE COURT:  Can we get an overflow?
15           THE DEPUTY CLERK:  I'm sure we can.  We'll work on it.
16           THE COURT:  Anything anyone wants to bring up this
17  morning?  I'm going to go through my in limine rulings.
18           MR. BOVE:  No, your Honor.  Thank you.
19           MR. JACKSON:  No, your Honor.
20           MR. RODY:  No, your Honor.
21           THE COURT:  Okay.
22           I have read the parties' motions in limine and
23  considered all of the arguments they have raised.  I'm going to
24  rule now on the in limine motions.
25           With regard to the defendants' in limine motions,

1  motions in limine.  First of all, I'll deal with the security
2  measures.
3          Defendants' request with regard to security measures
4  at trial are granted in part and denied in part.  I have
5  consulted with the U.S. Marshal.  I have concluded that the
6  security screening procedures upon entrance of the building are
7  sufficient to guarantee safety.  Accordingly, there will be no
8  metal detectors outside the courtroom.  The defendants are in
9  custody.  We'll have a full complement of marshals with the
10 defendants so that no additional U.S. marshals will be
11 required.  I note that the Supervising Deputy U.S. marshal will
12 be monitoring courtroom security with visits from time to time.
13 I will allow two Court Security Officers to attend the sessions
14 of the court.
15         The protected witnesses will be allowed to testify
16 using a pseudonym.  Defendants' request that no ban be placed
17 on courtroom artists ability to sketch witnesses is denied.  I
18 am satisfied that there are serious safety concerns for certain
19 testifying witnesses and believe allowing them to testify using
20 the pseudonyms and without recording is necessary for their
21 protection and the protection of their families.
22         With regard to in limine motion No. 1 by the
23 defendants.  The defendants' request to exclude evidence or
24 argument showing that the defendants have wealth or a lifestyle
25 supported through illegitimate income.  That application is

denied.  The government has represented that it does not intend to introduce evidence relating to the sources of the defendants' wealth or argue that the defendants supported themselves through illegitimate means because they had a lifestyle beyond their legitimate income.  The government will be allowed to attempt to prove that the defendants had access to and the ability to procure private aircraft.  That is probative of the defendants' participation in the charged conspiracy and their ability to facilitate the dispatch of cocaine.

With respect to in limine motion No. 2.  The defendants' request that CS-1 be precluded from offering testimony regarding the identity of the white powdery substance is denied.  CS-1 may properly offer lay witness opinion testimony that the substance was cocaine.  The Committee Notes to the 2000 amendment to Rule 701 state that a lay witness may "testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established." CS-1 has familiarity with cocaine, and he saw, touched, and smelled the substance.  Ingestion is not required for CS-1 to offer his lay opinion.

The request with regard to CS-2 that he be precluded from offering testimony regarding the identity of the white powdery substance is granted.  CS-2 does not have the same familiarity with cocaine as CS-1, and he only testified that he

1    only saw the substance.

2            With regard to in limine motion No. 3.  Defendants'
3    request to preclude the government from introducing any
4    references to FARC, or the Fuerzas Armadas Revolucionarias de
5    Colombia, please excuse my Spanish, in the defendants'
6    postarrest statement, that application is denied.  FARC is said
7    to be the source of supply for the cocaine at issue here.
8    Campo so states in his talk with Gonzalez and in his earlier
9    conversation with CS-1.  The government will be allowed to
10   refer to FARC as a paramilitary organization operating in
11   Colombia, Venezuela, and Ecuador that is one of the largest
12   producers of cocaine in the world, but the government will not
13   refer to FARC as "designated foreign terrorist organization."
14   The statements allowed are probative of the source of supply
15   and of the defendants' capability to procure cocaine, and such
16   probative value is not substantially outweighed by a risk of
17   unfair prejudice.

18           Defendants' request to preclude the government from
19   offering statements made by CW-1 is denied.  The government may
20   introduce through Special Agent Gonzalez certain limited
21   statements made by CS-1 to provide background and context for
22   the jury.  The government may not elicit any statements by CW-1
23   to Gonzalez which are listed in footnote 12 at page 18 of the
24   government's opposition to the defendants' motions in limine.
25           Special Agent Gonzalez may testify that CW-1 contacted

   1   Special Agent Gonzalez that he gave instructions to CW-1; that
   2   CW-1 provided a picture of the October 2015 meeting in Honduras
   3   and that CW-1 said that he did not record the meeting.  This
   4   testimony my include the following subjects:  One, in early
   5   October 2015, CS-1 reported to Agent Gonzalez via BBM that CW-1
   6   had been contacted regarding potential cocaine transactions
   7   involving Venezuelan nationals; two, on October 3, CW-1
   8   reported to Agent Gonzalez via BBM that one or more Venezuelans
   9   were coming to meet him -- meet with him that day near Lago de
10   Yojoa about a drug trafficking venture; and three, CW-1
11   informed Agent Gonzalez that the Venezuelans with whom he had
12   met had requested that he send representatives to Venezuela.
13          In limine motion No. 4.  Defendants' request to
14   preclude admission of certain statements on the recordings made
15   during the October 23, 2015 meeting in Venezuela is denied.
16   Statements and references to war, jail, and the upcoming
17   political campaign and donations are probative of defendants'
18   motive to engage in conspiracy and their knowledge of the
19   object of the scheme, and they are not unduly prejudicial.  If
20   the government seeks to introduce the trial statements beyond
21   those identified by the government, the defendants can object
22   at that time.
23          Now with regard to the government's motions in limine.
24   In limine No. 1.  For the reasons I denied defendants' third
25   motion in limine, I grant the government's request to certain

1    limited nonhearsay statements of CW-1 to provide background and
2    context for the investigation.
3            Motion in limine No. 2.  As previously indicated on
4    the defendants' second motion in limine, I grant the
5    government's request to allow CS-1 to testify that the white
6    powdery substance he examined at the meeting of October 27,
7    2015 is cocaine, and I deny the government's request to allow
8    CS-2 to testify as to what the substance was.
9            In limine No. 3.  The government's request to
10   introduce evidence regarding defendants' activities between May
11   and August of 2015 to obtain weapons is granted.  This is
12   direct evidence that is relevant and probative of the charged
13   conspiracy, and it is not unduly prejudicial.
14           Motion in limine No. 4.  The government's request for
15   exclusion of questioning regarding the DOJ's May 12, 2014
16   policy concerning electronic recording of statements is
17   granted.  The defendants may ask about the DEA's agents ability
18   to record the defendants' custodial statements and the reasons
19   for not doing so, but the probative value of asking about the
20   DOJ recording policy is outweighed by the risk of undue delay
21   and the introduction of confusion on a collateral issue.
22           No. 5.  The government's request that the defendant
23   not be allowed to admit self-serving portions of their prior
24   statements to the extent that they would not be otherwise
25   admissible pursuant to a hearsay exception is denied without

prejudice.  The government's blanket request does not identify which statements it seeks to exclude.  In these circumstances it is not possible to determine whether those statements should be considered at the same time as any admitted portions of the evidence.

In limine motion No. 6.  The appropriate security measures for trial have already been addressed.

No. 7.  The government's request that the defendants be precluded from introducing an entrapment defense is denied.  The government's request is certainly premature.  With regard to <u>Bruton v. United States</u>, the Supreme Court held in <u>Bruton v. United States</u> that the Sixth Amendment's confrontation clause precludes the admission of a nontestifying codefendant's implication of a defendant.  The government will redact certain specified material in Mr. Flores de Freitas's confession to address this issue.  The Court invites the parties to submit appropriate limiting instructions to the jury.

With regard to sealing of the motion papers, I now turn to the question of sealing portions of the briefing on the government's motions in limine.  The parties should file the briefs they submitted for in camera review with the following redactions:

Exhibits B, C and D to the government's motion in limine;

Sensitive information contained in the government's

GB29FLO1                         Trial

1    motion regarding security measures and references to such
2    sensitive information in the defendants' opposition, including
3    pages 38 and 39;
4             References to Rule 404(b) evidence that the Court has
5    not ruled on, including pages 3, 4, 39 and in footnote 12 of
6    the government's motions, and pages 16 through 23 and 41 of the
7    defendants' opposition.
8             I note I have received your requests to charge but --
9    I did not receive a verdict form.  So if you want to submit a
10   verdict form we'll consider that as well.
11            Mr. Ovalles advises me that I did submit a verdict
12   form.  I haven't seen it yet.  So you've complied with that
13   request.
14            Marlon, what time do you estimate we'll get together
15   again?
16            THE DEPUTY CLERK:  Well we estimate to receive the
17   hardship questionnaires around 11:30 a.m., maybe sometime
18   before then.  I expect we should resume or reconvene at around
19   that time.
20            THE COURT:  11:30.
21            MR. JACKSON:  Your Honor, brief question about the
22   questionnaires.
23            THE COURT:  Yes.
24            MR. JACKSON:  Will the Court be delivering the copies
25   of the questionnaires to the parties in advance of us

1     reconvening or in advance of us -- in advance of the jury pool
2     coming in?
3              THE COURT:  Well, what I normally do is after we've
4     gone through all the questions that you've submitted questions
5     on, I have my own questions, we've blended them together.  I
6     ask questions.  And then I ask the jurors after we have the
7     twelve, we've gone through them, ask them to review the
8     separate background information.  Do you have a copy?
9              I give each juror the -- what is your name?  What is
10    your date of birth?  Where were you born?
11             Is that what you're referring to, Mr. Jackson?
12             MR. JACKSON:  No, your Honor.  I just know that
13    they're receiving the questionnaires.
14             THE COURT:  The hardship questionnaires?
15             MR. JACKSON:  The hardship questionnaires, your Honor.
16    So I just was curious procedurally is the Court going to -- are
17    we going to come in and get a chance to look at the written
18    questionnaires before the jurors actually come in or will we be
19    looking at them at the same time that the jurors come in?
20             THE COURT:  Marlon, what's the answer to that?  I
21    think you'll be looking at them before.
22             THE DEPUTY CLERK:  We were planning on making copies
23    and handing copies to counsel of those hardship questionnaires
24    that claim hardship.  Those that do not claim hardship we were
25    not planning on making copies of those.

1              THE COURT:  So I guess you see it will be pile A,
2     which will be the people who don't claim a hardship; and pile B
3     where the people ask to be excused.  That's what you're going
4     to see.  You're going to see everybody who doesn't claim
5     hardship.  They will be part of the people who are sent
6     upstairs.
7              Does that clarify?
8              MR. RODY:  I think I'm following on what Mr. Jackson
9     said.  The question is:  Who is determining to excuse people
10    for hardship?  Is the jury clerk doing that downstairs or will
11    that be done by your Honor up here?
12             THE COURT:  That's a good question.
13             MR. RODY:  And would we get a chance to look at those
14    hardship responses to determine whether those are valid and
15    warranted, excusable?
16             THE COURT:  Yes.  I want you to look at the hardship
17    questionnaires because those are people who are asking to be
18    excused.  The people who don't ask to be excused, Mr. Rody,
19    will be here in the courtroom.
20             MR. RODY:  Sure.
21             THE COURT:  I guess it's my intention that you'll look
22    at the people who are claiming hardship to make sure, in fact,
23    it's a legitimate claim.
24             MR. RODY:  I think that was the question.
25             THE COURT:  Is that the trick question, Mr. Jackson?

GB29FLO1                        Trial

1    I'm sorry it took me so long to understand the question.
2             MR. JACKSON:  I think I phrased it somewhat
3    unartfully, but that was part of it.  And your Honor answered
4    the other part.  So, thank you.
5             THE COURT:  So the jurors will not be up here while
6    you're reviewing the hardship, people who have responded
7    affirmatively to the hardship questionnaire.  Right, Marlon?
8             THE DEPUTY CLERK:  I'm sorry, Judge.  I was not paying
9    attention.
10            THE COURT:  I frequently have this problem.
11            So the parties will see the hardship questionnaires
12   and people claiming hardship before they see the jurors.
13            THE DEPUTY CLERK:  Yes.
14            THE COURT:  And then the ones that we agree there's a
15   hardship, they will be excused downstairs.  If we don't agree
16   that there's a hardship or somebody disagrees as to the claim
17   of hardship, we'll bring them upstairs.
18            MR. RODY:  That's great.  Thanks, Judge.
19            THE COURT:  Anything else?
20            MR. JACKSON:  No.  Thank you, your Honor.
21            THE COURT:  Now, are the marshals going to keep
22   Mr. Campo Flores and Flores de Freitas close by?
23            (Pause)
24            THE COURT:  We'll keep the defendants on the fifth
25   floor -- fourth floor.

            I want to make sure it's all right with you, that nobody raises an objection that the public has been excluded. We'll put the members of the public in an overflow courtroom for the jury selection.

            MR. BOVE:  No objection from the government, your Honor.

            MR. JACKSON:  We have no objection, your Honor.

            MR. RODY:  No objection, Judge.

            THE COURT:  Make those arrangements now.

            MR. RAYMOND:  Nate Raymond with Reuters, a member of the media.

            I just want to make sure that the overflow room, sometimes things aren't mic'd up well.  So if, when jurors are being questioned, if it's possible to make sure they are given a mic so people can hear what they're responding to.  That will be my one concern with the overflow room.

            THE COURT:  Jurors are not mic'd.  They're not going to be mic'd.

            MR. RAYMOND:  It's going to be hard then to observe and report on the voir dire process if we're not in the courtroom.

            THE COURT:  Let me think about that.

            What do you think about a live feed into the press room.

            MR. RAYMOND:  That's the same issue that with the

1   mic'ing. It's all the same system.
2         I have been in past trials. I have seen a mic passed
3   around to jurors. That was doable. That might solve that
4   issue. You're concerned about space in this courtroom. But I
5   just want to raise that as an issue.
6         THE COURT: How many members of the working press are
7   going to attend?
8         We'll see about getting a mic.
9         And then as soon as the jurors are whittled down to
10  appropriate size so that you could have your own bench we'll
11  try to get the press into the courtroom maybe at a back bench.
12  Okay. Thank you very much.
13        MR. NEUMEISTER: Judge, Larry Neumeister with the
14  Associated Press.
15        Are you saying the press is not allowed in the
16  courtroom? Like, no one from the press is allowed in the
17  courtroom during the voir dire?
18        THE COURT: I'm saying the jurors are allowed in the
19  courtroom. But the jurors are going to be numerous, so
20  numerous that there won't be enough seats for the press.
21        MR. NEUMEISTER: There has to be at least
22  representatives of the press, even if it's a small pool. The
23  press cannot be totally excluded from the courtroom.
24        THE COURT: You wouldn't be excluded. You'd be in the
25  overflow room.

GB29FLO1                         Trial

1            MR. NEUMEISTER:  We have to be inside the courtroom.
2    There has to be representatives inside the courtroom.  There's
3    plenty of legal precedent for this.  I'm surprised the
4    prosecutors aren't pointing that out.  It could totally foul
5    the trial.
6            THE COURT:  Okay.  Thank you.
7            (Recess pending jury selection)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25