```
GB39FLO1
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA,
3
                v.                         15 Cr. 765 (PAC)
4
   EFRAIN ANTONIO CAMPO FLORES and
5  FRANQUI FRANCISCO FLORES DE FREITAS,

6                Defendants.
   ------------------------------x
7
                                           New York, N.Y.
8                                          November 3, 2016
                                           11:08 a.m.
9  Before:

10                 HON. PAUL A. CROTTY,

11                                         District Judge

12                        APPEARANCES

13 PREET BHARARA
        United States Attorney for the
14      Southern District of New York
   EMIL J. BOVE III
15 BRENDAN F. QUIGLEY
        Assistant United States Attorneys
16
   BOIES, SCHILLER & FLEXNER LLP
17      Attorneys for Defendant Campo Flores
   RANDALL W. JACKSON
18 JOHN T. ZACH
   JOANNA CHRISTINE WRIGHT
19
   SIDLEY AUSTIN LLP
20      Attorneys for Defendant Flores de Freitas
   DAVID M. RODY
21 ELIZABETH A. ESPINOSA
   MICHAEL D. MANN
22
   ALSO PRESENT:
23
   HUMBERTO GARCIA
24 ERIKA DE LOS RIOS
   Spanish Interpreters
25

1              (Trial resumed)
2              THE COURT:  Marlon, would you swear the jury please.
3              (A jury of twelve and four alternates was impaneled
4     and sworn)
5              THE COURT:  Please sit down.
6              Now on Monday morning when we resume I will give you
7     further instructions.  But I just want to tell you right now
8     how important your service is to the resolution of these
9     criminal trials.  It's a very small court building.  It looks
10    very large and generous.  But you'll see some of the lawyers,
11    you'll see me walking around the courthouse, the government
12    attorneys, and the defense attorneys.  They can't talk to you.
13    So don't expect them to say hello.  Don't bear them any ill
14    will because they don't say hello to you.  The instructions
15    that they're operating under is that they should not talk to
16    you and they should not engage in conversation with you.  So
17    they're not being rude.  They're following the instructions
18    that I have given them.
19             Let me introduce some of the people who you see in the
20    courtroom.  The court reporter is Karen Gorlaski.  That's Karen
21    sitting right there in front of you.  And she's assisted by Pam
22    Utter who is the other court reporter.
23             Our interpreters are Humberto Garcia.  Is that you,
24    Humberto, right there.  And Erika de los Rios.  They're
25    assisted by Mercedes Avalos and Mirta Hess who are the

1   alternative translators.
2   I have two law clerks who help me with the law, Laena
3   Keyashian who is sitting right here in front of the computer
4   screen and Sarah Hoefle who is sitting by the door.
5   Now our courtroom days start at 9:30 in the morning.
6   We go from 9:30 to 4:30.  Try to start as close as possible to
7   9:30.  And we always stop at 4:30 because of travel, people on
8   the jury have to travel.  We go from 9:30 to 12:45.  Take an
9   hour and fifteen minutes for lunch.  And then resume at
10  2 o'clock and go to 4:30.  We have a fifteen-minute break in
11  the morning and a fifteen-minute break in the afternoon.
12  I will give you further instructions on Monday about
13  what you should do and how you proceed, listen to the evidence
14  in the case.  But I think those are the instructions that I
15  want to give you right now.
16  In the meantime, don't do any research on the case.
17  As I told you before, all the evidence that you consider will
18  come from the witness stand right here and activities that take
19  place in the courtroom.
20  You're not to consider any other source.  Don't do any
21  research on your computers, Facebook, Google or any of those
22  search engines.  You're to decide this case solely and strictly
23  on the evidence that you hear in this courtroom.
24  Don't talk about the case with anybody.  And I will
25  give you further instructions on that Monday.

1  　　　　　Right now I'm going to excuse you and we'll resume
2  with the trial.  I will give you opening instructions.  The
3  government will do its opening.  The defense, if they want to
4  make an opening, will make their opening on Monday.  And then
5  we'll start hearing witness testimony.
6  　　　　　Is there anything else you want me to call to the
7  jury's attention?
8  　　　　　MR. BOVE:  No, your Honor.  Thank you.
9  　　　　　MR. JACKSON:  No, your Honor.  Thank you.
10 　　　　　THE COURT:  Now when I excuse you you'll have to go
11 through some paperwork -- I didn't introduce Mr. Ovalles.
12 Mr. Ovalles is my courtroom deputy.  He is the primary
13 interface between the jury and the court.  So if you have any
14 questions, take it up with Mr. Ovalles.
15 　　　　　Thank you very much.  I'll see you at 9:30 on Monday
16 morning.
17 　　　　　(Jury excused)
18 　　　　　(Continued on next page)
19
20
21
22
23
24
25

1            (In open court)
2            THE COURT:  Please be seated.  Is there anything else
3    anybody wants to take up right now?
4            MR. BOVE:  Not for us, Judge.
5            MR. RODY:  There are two issues, Judge, that I spoke
6    briefly with the government about this morning.  And we did not
7    have a chance to actually address the issue so I want to try to
8    address it with him for just a minute or two and if we can
9    reach a resolution then we won't need the court's assistance
10   but we may.  I don't know if you want to have Marlon call you
11   or wait for a few minutes.  It may take me a few minutes.
12           THE COURT:  You want to talk to Mr. Bove and
13   Mr. Quigley?
14           MR. RODY:  We're going to have a discussion right now,
15   hopefully.
16           THE COURT:  I'm only one floor away, Mr. Rody.  So if
17   you want me to come back down let Marlon know.
18           MR. RODY:  That sounds great.
19           THE COURT:  Anything else Mr. Jackson?
20           MR. JACKSON:  No.  Thank you, your Honor.
21           (Recess)
22           (Jury not present)
23           THE COURT:  Mr. Rody.
24           MR. RODY:  Thank you, Judge.  As I mentioned there
25   were two issues that we raised.  One of them we've worked out

1    with the government.  So there's just one issue we want to
2    raise to your Honor's attention and it concerns one of the
3    pretrial motions that your Honor ruled on yesterday.
4           THE COURT:  Right.
5           MR. RODY:  And this related to the background
6    testimony that your Honor was going to allow from Agent
7    Gonzalez concerning CW-1.
8           THE COURT:  Right.
9           MR. RODY:  And we understand your Honor's ruling and
10   we don't have a problem with most of it and I have the
11   transcript of the hearing from yesterday.  And at page six of
12   the transcript is where you start your ruling.  This is the
13   transcript of yesterday's pretrial hearing.  And where you
14   start to say that the defendant's request to preclude the
15   government from offering the statements made by CW-1 is denied.
16   And then you specify, that ruling on page seven, the relevant
17   part reflects -- sorry.  It starts on the bottom of page six.
18   Special Agent Gonzalez may testify that CW-1 contacted Special
19   Agent Gonzalez, that he gave instructions to CW-1.  That CW-1
20   provided a picture of the October 2015 meeting in Honduras and
21   that CW-1 said that he did not record the meeting.  We don't
22   have a problem with any of that.
23          And then you specify:  This testimony may include the
24   following subjects:  One, in early October of 2015 CS-1 -- but
25   I think you meant to say CW-1 -- reported to Agent Gonzalez via

                BBM that CW-1 had been contacted regarding potential cocaine

                transactions involving Venezuelan nationals.  And then it

                follows after that.  And it repeats essentially verbatim the

                government's request in their motion, at page seven of their

                motion of the subjects that they want to specifically elicit

                from Agent Gonzalez about what he learned from CW-1.  This gets

                very granular down to the, you know, exact words that are used.

                          Our only problem is with the first of those statements

                that in early October 2015 CW-1 reported to Gonzalez via BBM

                that CW-1 had been contacted regarding potential cocaine

                transactions.

                          Our view, Judge, is that this is hearsay.  It's

                being -- the government wants to introduce it for its truth

                that CW-1 was contacted as opposed to CW-1 contacting someone.

                And it goes directly to the defendants' intent to participate

                in the charged crime, to a potential affirmative defense we may

                assert.  It's one of the most disputed issues in the case.  And

                they want it for the truth.  And it's hearsay.  We cited cases

                on this in our brief.  And I think it's not necessary to

                achieve what they want to achieve for a background.

                          It would be perfectly appropriate if Agent Gonzalez

                started with:  On October 3, CW-1 reported to Gonzalez via BBM

                that one or more Venezuelans were coming to meet with him that

                day.  That is the second statement that they want to introduce.

                Again, it's on page seven of their brief, which is the

1     government's motion in limine.

2             It's only the first statement that we think is

3     impermissible hearsay and we, frankly, think it's a serious

4     legal issue that might warrant reversal if introduced because

5     it is introduced for its truth.  That's what they are seeking

6     to introduce it for.

7             THE COURT:  Mr. Bove.

8             MR. BOVE:  Judge, that's not case.  That's not the

9     reason we're seeking to offer this statement pursuant to your

10    Honor's ruling yesterday.

11            We are seeking to offer it to demonstrate how Special

12    Agent Gonzalez conducted the investigation.  We'd be fine, I

13    think it probably makes sense for there to be a limiting

14    instruction at this point about the precise purpose for which

15    the statement is being offered.

16            But the investigative steps that Special Agent

17    Gonzalez took and the instructions that he gave and the context

18    in which he gave them, those are matters that are admissible.

19    Not relying on the truth of the statement from CW-1 to Special

20    Agent Gonzalez but in a way to illustrate what Special Agent

21    Gonzalez did after that.

22            It's just not the case, as a factual matter, that this

23    investigation started on October 3 when CW-1 reached out again.

24            So to illustrate the background of the investigation

25    and the steps that Special Agent Gonzalez took, we think that

statement is admissible on that basis, not for its truth.

MR. RODY: Judge, if I may just react to that.

THE COURT: Sure.

MR. RODY: I don't have a problem with all the things he said about so the jury can understand why Gonzalez did what he did, why Gonzalez gave the instructions that he gave to CW-1, how that resulted in the flow of the investigation after that. Nothing that Mr. Bove said requires the introduction of the concept that the communication that led to the Venezuelans coming to Honduras -- this investigation starts when Gonzalez gets information that the Venezuelans are coming I think the next day to meet with him. It's not relevant to what -- the instructions Gonzalez gives, how that comes to pass; whether they contacted CW-1 or CW-1 contacted them. Because if you allow in the statement that CW-1 was contacted by somebody, then if the government asserts -- sorry. If the defense asserts an entrapment defense saying that CW-1 entrapped them, they -- the government would be able to point to that statement and say no, CW-1 was contacted by someone. It's not that CW-1 reached out to them.

THE COURT: Mr. Rody, you had some in limine motions?

MR. RODY: Correct.

THE COURT: Where do you raise this issue with respect to -- I'm at page seven of the government's response, but where do you raise it?

MR. RODY:  Sure.  One moment, Judge.  It was I believe one of our smaller motions.

If you look at defendants' motion in limine no. 3 to preclude admission of reference to the FARC and the postarrest statements and hearsay statements of the government's informants, at page five of that I believe is the part where we say the Court should preclude the government from offering alleged statements made by the informant known as CW-1 or El Sentado to DEA agents.  And we cite this case U.S. v. Check on page six of that motion.  So it would be motion in limine no. 3, Judge, filed on the 20th.

THE COURT:  I have your objection.

Yes, Mr. Bove.

MR. BOVE:  Just on the matter of U.S. v. Check.  In that case the government relied on approximately 17 statements like the single statement that is presently at issue here.  I think the cumulative effect there was highly relevant to the Court's analysis.

We're talking about a single statement at issue to illustrate how this investigation was conducted and consenting to a limiting instruction that it's not being offered for its truth.

We're not going to argue, in response to the defendants' entrapment, anticipated entrapment defense, that based on this piece of testimony that's at issue you can -- the

1   jury could conclude that there was no inducement by the
2   government.  We're not going to rely on the statement for the
3   truth as we have represented to the Court and the defense.
4              THE COURT:  All right.
5              MR. JACKSON:  Your Honor, can I be heard?
6              THE COURT:  Yes, Mr. Jackson.
7              MR. JACKSON:  Thank you, your Honor.
8              I just want to briefly address that.  The only thing I
9   want to say in addition to what Mr. Rody has said is that that
10  is not I think the appropriate reading of Check.  It's not
11  about the number of statements.  And, frankly, we don't care
12  about all the other statements that they want to introduce
13  about their relationship with CW-1.  It's about the
14  introduction.
15             What the Second Circuit took serious issue with in
16  Check and reversed the district court for, concluding that the
17  district court's failure to exclude damaging hearsay testimony
18  constituted prejudicial error.  The reason they did that is
19  because the government attempted to use the backdoor device of
20  just saying this is background in introducing highly contested
21  important information.  And in that case there may have been a
22  number of additional statements.  We're not contesting the
23  additional statements in this case.  It's just the one
24  statement that goes to the heart of our defense.
25             THE COURT:  The one statement being.

1     MR. JACKSON:  The one statement that CW-1 was
2  contacted by the defendants.  That's disputed.  We dispute it.
3  And there's not a witness that we can cross-examine about that.
4  So they shouldn't be allowed to introduce it through hearsay.
5     THE COURT:  Okay.  This is in the nature of
6  reconsideration.  I'll take a look at it again.  And if the
7  parties -- Mr. Bove, you want to submit proposed limiting
8  instructions?
9     MR. BOVE:  Yes, your Honor.
10     THE COURT:  And if the government -- if the defense
11  wants to comment on that we'll -- I'll consider their request
12  for a limiting instruction as well.
13     MR. JACKSON:  Thank you, your Honor.
14     MR. RODY:  Thank you, Judge.
15     MR. JACKSON:  Have a good weekend, Judge.
16     THE COURT:  I'll be here.  I bet you will be too.
17     Oh, can I say one further thing.  I want to say this
18  in my preliminary instructions and I think you probably
19  understand this based on your -- a lot of you have had prior
20  experience with me.  I like to keep the sidebar conferences to
21  a bare minimum.  We have a limited time with the jury.  We want
22  to get the case in to the jury as quickly as possible.  I think
23  that's in everybody's interest.  I'm here early in the morning.
24  I'm here late at night.  I work through the lunch and I'll work
25  through the breaks.  If we have problems with the proof, with

1     the testimony, that's when I like to take it up rather than

2     calling for a sidebar conference.  I'm going to be very tough

3     on sidebars, saying no, we'll take it up later.

4              MR. JACKSON:  Your Honor, we understand that and we

5     think that that is obviously the best practice.  May we -- I

6     know that there is a strong --

7              THE COURT:  You want an exception already?

8              MR. JACKSON:  I do, your Honor.  I know there's a

9     strong disinclination towards any speaking objections,

10    obviously, in this court.  One thing that was suggested by

11    Judge Cote in one of my trials in front of her that we found

12    helpful in avoiding sidebars is she said that the parties, if

13    they felt there was particularly an issue that they wanted the

14    Court to be aware of they could cite to it -- if there was --

15    they, without making a speaking objection, state the rule or

16    the rule of evidence that they believe is at issue, if there is

17    a true confusion or the specific motion in limine that they

18    think is at issue and then sit down and then that could obviate

19    in some cases where it's not clear just from the objection the

20    need for a sidebar if the Court would permit that.

21             THE COURT:  We already know based on the in limine

22    motions what the key disputes are, don't we?

23             MR. JACKSON:  Yes, your Honor.

24             THE COURT:  You're not going to every time Agent

25    Gonzalez testifies you're not going to say this is governed by

1    in limine no. 3, we object.
2             MR. JACKSON:  No, your Honor.
3             THE COURT:  You've already done that, right?
4             MR. JACKSON:  Yes, your Honor.  We're looking forward
5    to Agent Gonzalez's testimony so we don't want to interrupt it
6    at all.  But it's just if there is an unexpected twist as there
7    sometimes is in the evidence we would just ask for that, that
8    bit of leave in terms of an additional option to avoid the need
9    for a sidebar.
10            THE COURT:  Okay.
11            MR. JACKSON:  Thank you, your Honor.
12            THE COURT:  You're going to say 403?
13            MR. JACKSON:  There are a couple --
14            THE COURT:  As long as we're talking about rules of
15   evidence, the one I like is Rule 611 which gives the judge the
16   inherent right to control the testimony, the volume, the length
17   of the cross-examination, so things are done as quickly and
18   expeditiously as possible.
19            MR. JACKSON:  It's a great rule.
20            THE COURT:  Everybody loves it.  Thank you.
21            Mr. Ovalles as given me:  Ms. Shellian Heredia.  She
22   says she's a school administrator in charge of running a school
23   for young women.  She claimed that there was a hardship.  She's
24   juror no. 11.
25            Alternate no. 2, Ms. Johnson, has a trip planned to

Florida for November 22.  If she had raised that with me I would have said the trial will be over by November 22.

And juror no. 60, Ms. Bruno-Villanueva, who is alternate 3, she has a doctor's appointment on November 30.

So I'm going to call that to your attention.  I'm not going to do anything about those objections.  I think two of them are not serious at all.  Ms. Herediaan is a school administrator working for -- I'm not going to recognize hardship.  But share that with them.  Okay.  Thank you.

(Adjourned to November 7, 2016 at 9:30).